James Everett Shelton
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
jeshelton595@gmail.com

**Plaintiff, Pro Se**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES EVERETT SHELTON**<br>316 Covered Bridge Road<br>King of Prussia, PA 19406<br>**Plaintiff**<br><br>v.<br><br>**TITAN FUNDING PARTNERS LLC**<br>c/o Premier Corporate Service<br>90 State Street, Suite 700 Box 10<br>Albany, NY 12207<br><br>**Defendant** | No. _____ |

## **COMPLAINT:**

Plaintiff, James Everett Shelton, brings this action against Defendant TITAN FUNDING PARTNERS LLC, and alleges based on personal knowledge and information, and belief, as follows:

### **Preliminary Statement**

**1.** Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that TITAN FUNDING PARTNERS LLC sent a series of automated text messages for the purposes of commercial solicitation by contacting Plaintiff's cellular telephone number listed on the National Do-Not-Call Registry, which is prohibited by the TCPA.

1

**2.** Plaintiff never consented to receive any of these texts, which were placed to him for telemarketing purposes.

## Parties

**3.** The Plaintiff is JAMES EVERETT SHELTON ("Plaintiff"), a natural person, resides in King of Prussia, PA 19406, and is a citizen of the Commonwealth of Pennsylvania, and was the individual who received the alleged automated text messages in this case on his private mobile telephone, and was a resident of Pennsylvania during the calls, in this case in Montgomery County, Pennsylvania.

**4.** Defendant TITAN FUNDING PARTNERS LLC ("Titan") is a limited liability company organized and existing under the laws of the State of New York, and can be served via its registered agent, Premier Corporate Services, at 90 State Street, Suite 700 Box 10, Albany, NY 12207.

**5.** Defendant markets and sells, *inter alia*, loans and business financing to people in Pennsylvania, and engages in telemarketing into this district, as it did with the Plaintiff.

## Jurisdiction & Venue

**6.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 556 U.S. 368, 372 (2012).

**7.** This Court has personal jurisdiction over the Defendant because they have repeatedly placed telemarketing calls and text messages to Pennsylvania residents with Pennsylvania telephone area codes, and derive revenue from Pennsylvania residents, and they sell goods and services to Pennsylvania residents, including the Plaintiff.

8. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1)-(2) in that Defendant conducts business in, and a substantial part of the events giving rise to Plaintiff's claims occurred in Montgomery County, Pennsylvania, and Plaintiff was residing in Pennsylvania during all text messages as alleged in this case, in King of Prussia, Montgomery County, Pennsylvania. Defendant conducts business in this judicial district by calling Pennsylvania citizens.

## Statutory Background
## The Telephone Consumer Protection Act

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls to Protected Numbers

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

11. Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones). See *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

12. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

**13.**     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**14.**     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. See *Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

**15.**     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes any non-consensual calls made for non-emergency purposes, regardless of whether or not they are informational, political, telemarketing, telephone solicitations, or similar such calls. See FCC Enforcement Advisory: *Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

**16.**     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." I*n re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

18.     A text message is considered a "call" under the TCPA. *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663 (2016).

The National Do-Not-Call Registry

19.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

20.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

21.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

**Factual Allegations**

22.     Titan provides loans and other financial products to companies.

5

23.     Titan's telemarketing efforts include the use of automated dialing equipment to send automated text messages.

24.     At all times relevant hereto, Plaintiff maintained and used a cellular telephone line, with phone number (484) 626-3942.

25.     At all times material hereto, Plaintiff was the subscriber of the telephone number (484) 626-3942 and paid his cell phone bill through T-Mobile.

26.     Plaintiff's phone number is his private cell phone number and is used by Plaintiff solely.

27.     Plaintiff's phone number is registered with T-Mobile as his personal telephone number.

28.     Plaintiff's personal cellular telephone number is a "residential" telephone number that he uses for various personal, family, and household purposes, such as sending and receiving emails, timing food when cooking, sending and receiving text messages, calling friends and family while at home, using the phone's alarm function to wake up in the morning, and for navigation purposes.

29.     Plaintiff's personal cellular telephone number (484) 626-3942 has been registered on the Do-Not-Call Registry since June 26, 2015.

30.     Plaintiff registered his phone number on the Do Not Call Registry in order to obtain solitude from invasive and harassing telemarketing calls and text messages. The telemarketing calls prevented Plaintiff from using his phone for legitimate purposes.

31.     The Plaintiff has received at least four (4) automated text messages between February 10, 2022 and May 5, 2022 to his personal cell phone number 484-626-3942, without his prior express written consent and not related to an emergency purpose, promoting working capital and/or financing services from Defendant Titan.

32. **Text 1:** On February 10, 2022 at 6:16 PM, the Plaintiff received an automated text message from caller ID +1 (908) 224-7559. The text read:

> "Hi James, It's Derek from Titan. We're offering business funding based on monthly rev, up to $2m. Same day approvals.
>
> Company: Final Vertic Solution
>
> Direct Lender: Yes
>
> Early pay discount: Yes
>
> Email: jeshelton595@gmail.com
>
> How much did you need and is email correct?"

33. A true and correct screenshot of this text message is attached as **Exhibit "1"**.

34. **Text 2**: On February 20, 2022 at 1:25 PM, Plaintiff received an automated text message from phone number +1 (908) 224-7559. The text read:

> "Hi {name}. As a business owner we all work Sundays. Offering funding for your business Final Vertic Solution. Can approve by tomorrow. What's best email?"

35. A true and correct screenshot of this text message is also attached as **Exhibit "1"**.

36. **Text 3:** On March 23, 2022 at 1:42 PM, Plaintiff received an automated text message from phone number +1 (972) 597-8139. The text read:

> "Hi Its Derek from Titan. Offering business funding based on monthly rev, up to $2million. early pay discounts. What's best email?

37. A true and correct screenshot of Text 3 is attached as **Exhibit "2"**.

38. **Text 4**: On May 5, 2022 at 12:33 PM, Plaintiff received an automated text message from phone number +1 (229) 846-1605. The text read:

> "Good Morning, We can fund your business same day, 6-24 month options and early pay discounts. 2x rev up to 2m.
> Capital is expensive and terms are short since it's unsecured. We're always transparent.

>     Whats best email? – Titan cap"

39. A true and correct screenshot of Text 4 is attached as **Exhibit "3".**

40. Upon information and belief, Defendant's website is www.titanfundingpartners.com, their phone number is 718-682-4117, and their email address is info@titanfundingpartners.com.

41. Prior to these unsolicited telephone communications, the Plaintiff has never done any business with Defendant and Plaintiff never provided Defendant with his cellular telephone number.

42. Defendant did not have the Plaintiff's prior express written consent to send any of these automated text messages.

43. Plaintiff did not want or need a loan or any financing.

<u>Defendant's Use of an ATDS</u>

44. The four (4) text messages complained of were all conducted using an Automatic Telephone Dialing System ("ATDS"). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

45. Besides being placed with an ATDS, the two text messages were also placed using an "artificial or prerecorded voice" as outlined under 47 U.S.C. § 227(b)(1)(A).

46. Although it is an issue of first impression in the Third Circuit, Plaintiff contends that pre-programmed, "canned" text messages and replies meet the statutory definition of an "artificial or prerecorded voice." As a preliminary matter, a text message is treated as a call for TCPA purposes. *Campbell-Ewald Co.*, 577 U.S. at 156. And pre-written templates of text qualify as such, as the plain meaning of "voice," to mean the "faculty or power of utterance, speech; sound

regarded as, or likened to, vocal utterance, as the *voice* of the sea; anything likened to human speech as an instrument or medium of expression, as the ballot is the voice of the people; expressed wish, choice, or opinion, hence, right to express one's wish, etc.: vote, as to have no voice in the matter." Webster's Collegiate Dictionary (1936).

47. Indeed, pre-written templates of text have stark parallels to illegal soundboard technology, where an agent (usually in a foreign country) sits in front of a "board" of buttons and presses each one to play a pre-recorded audio response to the called party. See *Black v. First Impression Interactive, Inc.,* No. 21 C 3745, 2022 WL 169652, at *5 (N.D. Ill. Jan. 19, 2022) (collecting cases). The called party cannot hear or interact with the agent; the only interaction is accomplished through the board of pre-recorded audio responses. The only meaningful difference, and one without a distinction, is that an automated texting system consists of a board of pre-written templates to send to an individual.

48. The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the defendant employ[s] [ATDS] capacities to make automated calls," *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful." *Id.* at 879 (cleaned up).

49. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns." Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy

the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database. *See id*.

50. Under *Panzarella*, a system that uses a random or sequential number generator to produce each telephone number to be called from a list of telephone numbers, and then dials those numbers, is by definition an ATDS. This is so even if the telephone numbers in the list themselves were not randomly or sequentially generated. *See id.* at 879-880.

51. The system(s) Defendant used to place the texts to Plaintiff is/are an ATDS because it would be illogical/very difficult for Defendant's agents or employees to manually send text messages to the thousands of potential customers Defendant seeks to solicit. It would also be illogical to send the text messages in a non-automated manner, as they are formatted, read as if they are carefully scripted, and even contain paragraph spacing, which indicate that they were sent using pre-written templates.

52. Furthermore, the generic content in the text messages is a further indication that the messages sent by Defendant utilized an automatic telephone dialing system.

53. Upon information and belief, Defendant's ATDS used a random or sequential number generator to send automated text messages to his cell phone.

54. Two (2) of these text messages did not reference the Plaintiff's name.

55. Text 2 began "Hi {name}" which indicates that Defendant used a computer program to send the automated texts, which failed to work properly because it did not include the Plaintiff's name and instead included "name" inside brackets, where someone's name was supposed to be inserted by a computer program. This supports the inference that Defendant used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list." *Facebook*, 141 S. Ct. at 1171 n.7.

56. The text messages were sent *en masse* to many individuals in Pennsylvania and were pre-written scripts sent to all recipients, including the Plaintiff.

57. Text 4 stated "Good Morning" but this text message was not sent in the morning, rather, it was sent at 12:33 PM in the afternoon. A human being would likely not have sent a text during the afternoon which read "Good Morning". In reality, a computer program caused the automated text messages to be transmitted.

58. These facts, as well as the geographic distance between the Plaintiff and the Defendant, as well as the fact that these texts were part of a nationwide telemarketing campaign, demonstrate that the texts were transmitted using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

59. As this Court has remarked, other courts have held, post-Facebook, that allegations similar to those as here of the absence of a relationship between the parties, pauses and delays in audio, inaccurate list data, and the random or automated nature of the automation device, are all indicia of use of a random or sequential dialing device that gives rise to the inference at the pleadings stage that an ATDS was used to make the calls. See *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021). Post-*Facebook*, ATDS issues are summary judgment ones.

60. No facts exist here to support the conclusion that Defendant was texting a curated list of past individuals they have previously interacted with. Plaintiff does not and has never done business with Defendant and has never solicited a loan or funding from Defendant. By contrast to a company that calls phone numbers *en masse* to the public, a company that uses a select list of customers based on specific accurate criteria does not place calls using an ATDS because such

calling uses a database targeting existing customers' information rather than computer-generated tables or lists of individuals to be called. See *Panzarella*, 37 F.4th at 881–882.

61. *Panzarella* stands for the proposition that, when using a list of numbers to contact people, the computer must use something other than a random or sequential number generator to select the numbers to be called. Other triggers, such as birthdays or account delinquency, are neither random nor sequential, and thus using a dialer to place calls with such criteria is not using an ATDS. See id. at 879-881. 89.

62. *Facebook* did not use an ATDS because it did not use random or sequential means to select numbers to send text messages to. Rather, it used *a specific user action*, compromised account security, to send the messages. *Facebook*, 141 S. Ct. at 1168. In other words, an account data breach, not random or sequential selection, was used to send the text message. Similarly, the Ninth Circuit recently held in *Brickman v. United States* that Facebook did not use an ATDS when it sent birthday text messages because the *birthdays*, not random or sequential number generators, were used to draw numbers to be called. 56 F.4th 688 (9th Cir. 2022).

63. Likewise, the defendant in *Panzarella* did not use an ATDS because it used the select criteria of delinquent borrowers to dial numbers. Put another way, delinquency, not random or sequential means, was used to select numbers from a list of numbers associated with student loan accounts and then dial them. *Panzarella*, 37 F.4th at 882.

64. Plaintiff is ignorant of the exact process by which the Defendant used the automated system to contact the Plaintiff via text message. However, no facts exist to show that Defendant texted the Plaintiff in a targeted manner. Moreover, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes,*

*Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord *Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

65. Plaintiff has sufficiently pled at the pleading stage more than adequate facts to support a showing that the system Defendant used to contact the Plaintiff meets the definition of an ATDS and that Defendant used random or sequential methods to select numbers to be called.

66. The most obvious such non-random and non-sequential criteria, persons actually interested in receiving funding from the Defendant and who had provided their information to the Defendant, is obviously lacking here since the Plaintiff was never interested in funding and the Plaintiff never interacted with the Defendant. Moreover, if Defendants do proffer a potential criterion other than random or sequential selection used to make the calls, Plaintiff is nevertheless entitled to discovery on that issue to determine whether or not such a criteria was used in the Plaintiff's case and whether or not it was truly neither random nor sequential. This is a summary judgment issue, not a motion to dismiss one.

67. To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the texts at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendant can show that it had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access.

68. Plaintiff pays for each incoming and outgoing call on his telephone under an

unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

69. Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

70. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

71. Defendant is not an organization exempt from the TCPA.

72. Defendant's texts to Plaintiff were "telephone solicitations" as defined by the TCPA.

73. Defendant's texts to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

74. Plaintiff was harmed by these texts. Plaintiff was temporarily deprived of legitimate use of his phone because of the text message notifications, and his privacy was improperly invaded. Moreover, these texts injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff. The texts caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## Causes Of Action

### Count One:
### Violation of the TCPA's Prohibition Against Automated Calling Via Pre-Recorded Message,

75. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

76. The foregoing acts and omissions of Defendant and/or Defendant's affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute at least four (4) violations

of the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending calls, except for emergency purposes, to the telephone number of Plaintiff using an artificial or prerecorded voice.

77. As a result of Defendant's and Defendant's agents' violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every call made to his telephone number using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

78. The Defendants' violations were willful and/or knowing. Plaintiff seeks treble damages of $1,500.00 per call for each knowing and/or willful violation.

79. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or Defendant's affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to the Plaintiff's number using an artificial or prerecorded voice in the future.

### Count Two:
### Violation of the TCPA's Prohibition Against Automated Calling With an Automatic Telephone Dialing System (ATDS)

80. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

81. The foregoing acts and omissions of Defendant and/or Defendant's affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute at least four (4) violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the telephone number of Plaintiff using an ATDS.

82. As a result of Defendant's and/or Defendant's affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A),

Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

83. The Defendant's violations were willful and/or knowing.

84. As a result of Defendant's and Defendant's agents' knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

85. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or Defendant's affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the Plaintiff's number using an ATDS.

## Count Three:

### Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.

86. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

87. Defendant texted Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

88. Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the text messages described above, in the amount of $500.00 per text.

89. As a result of Defendant's and Defendant's agents' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**90.** The Defendant's violations were willful and/or knowing. As a result of Defendant's and Defendant's agents' knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

**WHEREFORE, Plaintiff prays for relief against Defendant, as follows:**
### I.      Prayer for Relief

On Counts 1-3:

1. Injunctive relief prohibiting Defendant from calling and/or texting Plaintiff's telephone number using an artificial or prerecorded voice and/or ATDS.

2. Because of Defendant's violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or – where such regulations were willfully or knowingly violated – up to $1,500 per violation, pursuant to 47 U.S.C. 227(b)(3) or 47 U.S.C. § 227(c)(5).

3. Prejudgment interest at the maximum legal rate;

4. Costs of suit herein incurred; and

5. All such other and further relief as the Court deems proper.

Total Statutory Damages Requested: $12,000.00.

### II.      Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 21, 2023

*James E. Shelton*
James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406 Phone:
484-626-3942
Jeshelton595@gmail.com

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JAMES EVERETT SHELTON

**DEFENDANTS**
TITAN FUNDING PARTNERS LLC

(b) County of Residence of First Listed Plaintiff  MONTGOMERY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  ALBANY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Plaintiff Pro Se, 316 Covered Bridge Road, King of Prussia, PA 19406, (484) 626-3942

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*   Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [x] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 446 Amer. w/Disabilities - Other | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TCPA, 47 U.S.C. 227 et. seq.
Brief description of cause:
Violations of the TCPA

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**  12,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE  05/21/2023

SIGNATURE OF ATTORNEY OF RECORD
*James E. Shelton*

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT  _____   APPLYING IFP  _____   JUDGE  _____   MAG. JUDGE  _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 316 Covered Bridge Road, King of Prussia, PA 19406

Address of Defendant: c/o Premier Corporate Services, 90 State Street, Suite 700, Box 10, Albany, NY 12207

Place of Accident, Incident or Transaction: By phone call to Plaintiff's phone in King of Prussia, Pennsylvania

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]   No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes [ ]   No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [✓]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes [ ]   No [✓]

I certify that, to my knowledge, the within case [ ] is / [■] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/21/2023    *James E. Shelton* (Pro Se Plaintiff)    Pro Se
                                                                  Attorney I.D. # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. Indemnity Contract, Marine Contract, and All Other Contracts
2. FELA
3. Jones Act-Personal Injury
4. Antitrust
5. Patent
6. Labor-Management Relations
7. Civil Rights
8. Habeas Corpus
9. Securities Act(s) Cases
10. Social Security Review Cases
[✓] 11. All other Federal Question Cases
   *(Please specify):* TCPA, 47 U.S.C. 227

B. *Diversity Jurisdiction Cases:*
1. Insurance Contract and Other Contracts
2. Airplane Personal Injury
3. Assault, Defamation
4. Marine Personal Injury
5. Motor Vehicle Personal Injury
6. Other Personal Injury *(Please specify):* _____
7. Products Liability
8. Products Liability – Asbestos
9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, James Everett Shelton, counsel of record *or* pro se plaintiff, do hereby certify:

[ ] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[✓] Relief other than monetary damages is sought.

DATE: 05/21/2023    *James E. Shelton* (Pro Se Plaintiff)    Pro Se
                                                                  Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| JAMES EVERETT SHELTON | : | CIVIL ACTION |
| v. | : | |
| TITAN FUNDING PARTNERS LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| | | |
|---|---|---|
| 05/21/2023 | *James E. Shelton* | Pro Se |
| **Date** | ~~Attorney-at-law~~ Pro Se | **Attorney for** |
| 484-626-3942 | | jeshelton595@gmail.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02